IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

No. 16-16659

MANUEL DE JESUS ORTEGA MELENDRES, *et al.*,

                Plaintiffs-Appellees

and

UNITED STATES OF AMERICA,

                Intervenor-Plaintiff-Appellee

v.

MARICOPA COUNTY; JOSEPH M. ARPAIO,

                Defendants

_____

BRIAN SANDS,

                Movant-Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

_____

UNITED STATES' MOTION TO DISMISS MOVANT-APPELLANT BRIAN
SANDS' APPEAL AS MOOT

_____

The United States respectfully moves, under Federal Rule of Appellate Procedure 27(a), to dismiss movant-appellant Brian Sands' appeal as moot. Sands is not a party to this case and retired as Chief of the Maricopa County Sheriff's Office (MCSO) in 2013. Although the district court found Sands in civil contempt for violating the court's 2011 preliminary injunction, the court did not impose any sanctions on Sands. And while the district court ordered *defendants* to compensate victims injured by the preliminary injunction violations, the court declined to hold the nonparty contemnors, including Sands, liable for this compensation. Accordingly, Sands suffers no legally cognizable adverse consequences from the civil contempt finding. Nevertheless, he has appealed. For the reasons explained below, these circumstances render Sands' appeal moot, and therefore it should be dismissed.

Pursuant to Circuit Rule 27-1(2), the United States has notified counsel for movant-appellant Sands and counsel for private plaintiffs-appellees of the United States' intention to file this motion. Counsel for movant-appellant Sands anticipates opposing this motion. Counsel for private plaintiffs-appellees agree with the request in this motion to dismiss the appeal and may file a separate motion to dismiss.

## BACKGROUND

1. In December 2007, private plaintiffs filed a class action against Maricopa County, then-Sheriff Joseph Arpaio, and other defendants alleging that, among other things, defendants engaged in a custom, policy, and practice of discriminatory policing against Latino individuals and unconstitutionally stopping them in violation of the Fourth and Fourteenth Amendments. E.R. 930-986; see also Doc. 26 (Attachment 1). The plaintiffs sought declaratory and injunctive relief to prevent defendants from discriminatory policing and exceeding the limits of their authority to enforce federal immigration law. Doc. 26.

In December 2011, the district court issued a preliminary injunction prohibiting certain unlawful detention practices. See *Ortega-Melendres* v. *Arpaio*, 836 F. Supp. 2d 959, 994 (D. Ariz. 2011), aff'd *sub nom.*, *Melendres* v. *Arpaio*, 695 F.3d 990 (9th Cir. 2012). Following a trial in 2012, the district court found defendants liable for a number of constitutional violations in its operations and procedures, see *Melendres* v. *Arpaio*, 989 F. Supp. 2d 822 (D. Ariz. 2013), and entered a permanent injunction, which was largely affirmed by this Court, see *Melendres* v. *Arpaio*, No. CV-07-02513, 2013 WL 5498218 (D. Ariz. Oct. 2, 2013), aff'd in part, vacated in part, 784 F.3d 1254 (9th Cir. 2015). In August 2015, the district court granted the United States' unopposed motion to intervene. Doc. 1239 (Attachment 2), at 1-2.

In May 2014, due to an apparent suicide by a former MCSO employee, the district court learned that defendants had failed to produce in discovery video and audio recordings of traffic stops, including "problematic stops," made during the period relevant to plaintiffs' claims. E.R. 840. Despite plaintiffs' pretrial request for such recordings, defendants had not disclosed the existence of the recordings or that a unit of MCSO maintained a catalog of them. E.R. 856. As the court found, MCSO's subsequent administrative investigations concerning these recordings "apparently revealed" that, "for at least seventeen months after the court issued the preliminary injunction," defendants continued to engage in unlawful detention practices. E.R. 841.

In February 2015, based on the newly gathered information, the district court issued an Order to Show Cause why defendants and others should not be held in civil contempt. E.R. 837-863; see also Doc. 843 (Plaintiffs' Memorandum of Law and Facts re Contempt Proceedings and Request for Order To Show Cause) (Attachment 3). The court set forth three bases for civil contempt: (1) failing to implement and comply with the court's December 2011 preliminary injunction; (2) violating pre-trial discovery obligations; and (3) failing to comply with the court's May 2014 orders regarding confidentiality and retrieving outstanding recordings. E.R. 837-863. Sands was named only in the first matter for failing "to abide by and apprise MCSO deputies of the terms of the preliminary injunction." E.R. 845.

On August 6, 2015, Sands filed a motion for summary judgment, arguing, as relevant here, that the contempt claim against him was untimely and therefore barred by laches. E.R. 348-360. On January 5, 2016, the district court denied the motion, concluding that plaintiffs did not unreasonably delay in seeking an Order to Show Cause and that, even if they did, there were genuine issues of fact regarding whether Sands was prejudiced by any such delay. E.R. 300-313.

In April, September, October, and November 2015, the district court held 21 days of evidentiary hearings on the three charges of civil contempt. E.R. 138. The court also addressed "the relief necessary to compensate the Plaintiff class for the Defendants' acts of misconduct." E.R. 138.

2. On May 13, 2016, the district court issued extensive findings of fact. E.R. 138-299. The court found Sands "[l]iable [f]or [c]ivil [c]ontempt for [k]nowingly and [i]ntentionally [f]ailing to [c]omply with the [p]reliminary [i]njunction." E.R. 157. The court determined that before Sands retired in 2013, he was the "principal contact between the MCSO and its outside attorneys" and the person "in charge of handling" the preliminary injunction. E.R. 158. The court found that MCSO's counsel had instructed Sands on the restrictions in the preliminary injunction, and when MCSO's counsel learned that MCSO had been violating the injunction, Sands had agreed that MCSO would cease the violative conduct. E.R. 158-159. The court also found that the violative conduct had

continued for at least seventeen months and Sands had misleadingly "assur[ed] [counsel] that no violations of the preliminary injunction were occurring." E.R. 159; see also E.R. 142.

Despite Sands' assurances to the contrary, the district court determined that Sands knew that certain MCSO personnel continued to violate the preliminary injunction, "yet he did nothing to stop them" and even "pressured" them to increase their operations for "political benefit." E.R. 159-160. Noting that Sands "misled at least counsel for Arpaio, if not his own subordinates, about the actual nature and effect of the injunction on the MCSO's operations," the district court concluded that Sands did not take reasonable steps to implement the preliminary injunction. E.R. 162. The court rejected Sands' argument that he should not be held in contempt because, he claimed, he would have been fired for taking any other actions than those that he did. E.R. 162.

After finding Sands in civil contempt for violating the court's order, the district court declined to impose any sanctions on him to coerce compliance. E.R. 162, 292. The court noted that the "purpose of civil contempt is to coerce compliance with a court order or to compensate another party for the harm caused by the contemnor." E.R. 292 (citation omitted). The court concluded that because plaintiffs "do not assert that Defendants remain in violation of the Court's preliminary injunction through the continued engagement in unlawful detention

practices," there is "no need to use the Court's contempt power to coerce Defendants to comply with the preliminary injunction." E.R. 292. Although the court did not expressly address using its coercive contempt power against Sands as a nonparty contemnor, because Sands had retired from MCSO nearly three years earlier, there was no dispute that he no longer remained in violation of the preliminary injunction. The court deferred resolution of compensation for victims injured by the violations of the preliminary injunction, inviting further input on this matter. E.R. 292.

    3. On July 20, 2016, the district court, based on its May 2016 findings of fact, issued a supplemental permanent injunction mandating additional policies and procedures for the MCSO. E.R. 71-137 (Second Supplemental Permanent Injunction/Judgement Order). This remedial order did not address monetary compensation for the victims of the defendants' contemptuous acts. See E.R. 77 n.2.[1]

    Subsequently, the parties submitted a victim compensation plan. Doc. 1747 (Attachment 4). On August 19, 2016, the district court issued an Order re Victim Compensation. Doc. 1791 (Attachment 5). The court ordered defendants to pay

---

[1] The July 20, 2016 order was twice amended. See Doc. 1760 (Amended Second Supplemental Permanent Injunction/Judgement Order) (Attachment 6); E.R. 4-70 (Second Amended Second Supplemental Permanent Injunction/Judgement Order).

compensation to the victims but expressly *declined* to hold the nonparty contemnors, including Sands, jointly and severally liable for any of these costs, despite plaintiffs' request to the contrary. Doc. 1791, at 3. The court explained that "[a]s a practical matter," the individual contemnors "would be unable to shoulder the expense involved even" in notifying potential victims and holding Sands and other nonparty contemnors financially liable would "provide only a symbolic benefit at best." Doc. 1791, at 3.

4. On September 16, 2016, Sands filed a notice of appeal from the Second Amended Second Supplemental Permanent Injunction, the subordinate interlocutory orders, and the order denying his motion for summary judgment.[2] E.R. 1-3 (Retired Chief Brian Sands' Notice of Appeal).

5. On March 23, 2017, Sands filed his opening brief as non-party appellant. He makes three arguments challenging the district court's finding of civil contempt: (1) the court erred in concluding that he knowingly and intentionally violated the preliminary injunction; (2) it is not equitable to find him in contempt because he "did what he could reasonably do under the circumstances" and his only options were to disobey the sheriff or resign; and (3) the contempt claim against him is barred by laches. Sands' Opening Brief, 22-44.

---

[2] On July 20, 2016, the district court entered a second supplemental permanent injunction addressing the discovery violations and evidence that MCSO had previously withheld. E.R. 71-137; see also Doc. 1760; E.R. 4-70. That injunction is not at issue in this appeal.

## DISCUSSION

Sands' appeal is moot. After finding Sands in civil contempt for violating the court's order, the district court accepted that Sands and the other contemnors were no longer violating the preliminary injunction, and therefore the court did not impose any sanctions on them to coerce compliance. The district court also did not impose liability on Sands for the victims' compensation. Accordingly, Sands suffers no legally cognizable adverse consequences from the civil contempt findings against him and therefore has no interest in the outcome of this appeal. Without a live case or controversy concerning Sands, his appeal must be dismissed as moot.[3]

1. Unlike criminal contempt sanctions, which are punitive, civil contempt sanctions are "wholly remedial." *Whittaker Corp.* v. *Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). Civil contempt sanctions are employed for "two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Ibid.*; see also *Shell Offshore Inc.* v. *Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) ("The purpose of civil

---

[3] The doctrines of standing and mootness are closely related here as both "restrict[] judicial power to the decision of cases and controversies." *Nome Eskimo Cmty.* v. *Babbitt*, 67 F.3d 813, 815 (9th Cir. 1995); see, *e.g.*, *Von Haar* v. *City of Mountain View*, 584 F. App'x 297 (9th Cir. 2014). The Supreme Court has described mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n* v. *Geraghty*, 445 U.S. 388, 397 (1980) (citation omitted).

contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive.") (quoting *Koninklijke Philips Elecs., N.V.* v. *KXD Tech., Inc.,* 539 F.3d 1039, 1042 (9th Cir. 2008)). Accordingly, as a general matter, a civil contempt order is "purged" when the contemnor has "complie[d] with the underlying order." *Turner* v. *Rogers*, 564 U.S. 431, 442 (2011); see *Marshall* v. *Whittaker Corp., Berwick Forge & Fabricating Co.*, 610 F.2d 1141, 1145 (3d Cir. 1979) ("[T]o purge a civil contempt citation is to comply with all aspects of the underlying order."); *Koninklijke Philips Elecs., N.V.*, 539 F.3d at 1044 (explaining that a civil contempt order is purged when a fine or penalty is avoided by some other form of compliance); *Hicks on Behalf of Feiock* v. *Feiock*, 485 U.S. 624, 635 n.7 (1988) (same).

As civil contempt is, by its nature, non-punitive, "[a] long line of precedent holds that once a civil contempt order is purged, no live case or controversy remains for adjudication." *United States* v. *Oakland Cannabis Buyers' Coop.*, 190 F.3d 1109, 1113 (9th Cir. 1999) (quoting *Thomassen* v. *United States,* 835 F.2d 727, 731 (9th Cir. 1987)), rev'd on other grounds, 532 U.S. 483 (2001); accord *In re Campbell,* 628 F.2d 1260, 1261 (9th Cir. 1980); see generally *Powell* v. *McCormack*, 395 U.S. 486, 496 (1969) (an appeal "is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome") (citation omitted). This conclusion "stems from the fact that in most

instances the court has no remedy to afford the party contesting the now purged contempt." *Thomassen*, 835 F.2d at 731; see also *McDonald's Corp.* v. *Victory Investments*, 727 F.2d 82, 85-86 (3d Cir. 1984) (explaining that a purged civil contempt order is moot because reversing the finding of contempt will not provide "any actual, affirmative relief" to the contemnor) (citation omitted); *Marshall*, 610 F.2d at 1145 ("A judgment of civil contempt becomes moot after being purged because the court's order cannot be disobeyed again.").

There is also no live case or controversy where a civil contempt fine has been satisfied by another party. For example, in *Union of Professional Airmen* v. *Alaska Aeronautical Industries, Inc.*, 625 F.2d 881 (9th Cir. 1980), the defendant company and its president, who was not a party to the case, were held in civil contempt for violating the preliminary injunction and ordered to pay a civil fine for damages and attorneys' fees, for which they were jointly liable. See *id.* at 882. After the defendant paid the civil fine, this Court dismissed the nonparty president's appeal as moot, concluding that he had "no interest in the appeal from the civil contempt order, given [the defendant's] satisfaction of the award." *Id.* at 884. This Court explained that "because the contempt order required both [the defendant] and [its president] to pay the civil fine," once the fine was paid, it "relieved [the president] of any liability under the contempt order" and rendered his appeal moot. *Ibid.*

Like a contemnor who has purged a civil contempt order through compliance or has been relieved of liability to pay damages, a contemnor who has never been subject to *any* coercive sanctions or held liable for remedial compensation maintains no live case or controversy for adjudication with respect to the contempt finding. In such cases, the appeal is moot. That is the case here.

As set forth above, Sands was not subject to any sanctions or financial liability as a result of the contempt finding against him. First, although the district court concluded that he was liable for civil contempt for failing to comply with the court's preliminary injunction, E.R. 157-162, the court did not find that he continued to be in violation of the injunction. Therefore, there was "no need to use the Court's contempt power to coerce [him] to comply with the preliminary injunction." E.R. 292. Second, while the district court could have required all contemnors to compensate the victims injured from the violation of the court's preliminary injunction, the court chose to limit such remedial liability to defendants. Doc. 1791, at 3.[4] Accordingly, having benefitted from the district court's decision not to use any of its remedial contempt authority against him as a nonparty contemnor, Sands lacks a legally cognizable interest in the outcome of an

---

[4] Indeed, Mr. Sands does not challenge the remedial order requiring defendants to compensate victims of the contempt. That order has been appealed separately by defendant Maricopa County. See *Melendres* v. *Maricopa County, Arizona*, appeal pending, No. 16-16661 (9th Cir.).

Case: 16-16659, 05/25/2017, ID: 10448533, DktEntry: 21-1, Page 13 of 17

- 13 -

appeal of the contempt order.  In short, because the civil contempt order does not raise a live case or controversy as to Sands, his appeal is moot.

The mere finding of civil contempt is not sufficient to maintain a live case or controversy for the purpose of an appeal.  Although a civil contempt finding may result in "embarrassment and humiliation" or other reputational hardships or stigma, "such consequences do not warrant an exception from the general principle that once purged, the contempt order is moot and cannot be reviewed." *McDonald's Corp.*, 727 F.2d at 86; see also *United States* v. *Johnson*, 801 F.2d 597, 600 (2d Cir. 1986) (recognizing that "even in the case of a criminal contempt the potential danger of moral stigma, in contrast to a possible loss of legal rights, is not sufficient to avoid mootness").  Indeed, a finding of civil contempt is not punitive and "is not appealable *until sanctions have been imposed*," even if the underlying action has reached a final judgment.  *S.E.C.* v. *Hickey*, 322 F.3d 1123, 1127 (9th Cir.) (quoting *Donovan* v. *Mazzola,* 761 F.2d 1411, 1417 (9th Cir. 1985)), opinion amended in other part on denial of reh'g, 335 F.3d 834 (9th Cir. 2003); see also *In re Chase Bank USA, N.A. Check Loan Contract Litig.*, 607 F. App'x 737, 738 (9th Cir.) (dismissing plaintiff's appeal of a civil contempt finding for lack of jurisdiction because no sanctions had accrued and plaintiff had purged the contempt), cert. denied *sub nom.*, *Herbison* v. *Chase Bank USA, N.A.*, 136 S. Ct. 697 (2015).

2. This appeal does not satisfy any of the exceptions that might save it from mootness. First, although collateral consequences from certain judgments may give an appellant "a substantial stake in the judgment" to avoid mootness, *Carafas* v. *LaVallee*, 391 U.S. 234, 237 (1968), Sands' opening brief fails to identify *any* injury resulting from the challenged contempt finding, let alone sufficient collateral consequences to give Sands a stake in an appeal.

The types of collateral consequences that courts have found sufficient for a litigant to maintain a legally cognizable interest in an appeal have involved "substantial civil penalties," such as the loss of the right to vote or serve as a juror, that typically result from *criminal* convictions. *Lane* v. *Williams*, 455 U.S. 624, 632 (1982). Sands faces no such collateral consequences resulting from the *civil* contempt finding against him. See *Puchner* v. *Kruziki*, 111 F.3d 541, 543 (7th Cir. 1997) (finding contemnor's appeal was moot and expressing "serious doubts" as to whether a civil contempt judgment "qualifies as a 'conviction' for purposes of the collateral consequences rule"); *Johnson*, 801 F.2d at 600 (dismissing contemnor's appeal as moot, observing that collateral legal consequences "are difficult to establish as to a civil contempt"); *Marshall*, 610 F.2d at 1145 ("Unlike a criminal conviction or involuntary commitment to a mental hospital, an adjudication of civil contempt carries with it no possibility of collateral deprivations of civil rights or other specifically legal consequences."); cf. *Cordero* v. *De Jesus-Mendez*, 867 F.2d

1, 21-22 (1st Cir. 1989) (concluding that because the law is clear that the appeal is moot based on contemnor's compliance with the contempt order, "the 'collateral consequences' argument * * * cannot be considered").  Moreover, in *Union of Professional Airmen*, this Court, in dismissing contemnor's appeal as moot, declined to "presume that there are any collateral consequences to the civil contempt order such as might arise had the order been one for criminal contempt." 625 F.2d at 884 n.4.

Second, this appeal is not saved by the "'capable of repetition' while 'evading review'" exception to the mootness doctrine.  *Turner*, 564 U.S. at 439 (quoting *Southern Pacific Terminal Co.* v. *ICC,* 219 U.S. 498, 515 (1911)).  This exception is "applicable only when there is 'a reasonable expectation that the same complaining party would be subjected to the same action again.'"  *Lane*, 455 U.S. at 634 (quoting *Weinstein* v. *Bradford*, 423 U.S. 147, 149 (1975)).  In the civil contempt context, this Court has held that a purged contempt order is moot, and is not saved by the capable of repetition but evading review doctrine, "unless there is 'near certainty' that the violation will recur."  *Oakland Cannabis Buyers' Coop.*, 190 F.3d at 1113 (quoting *In re Campbell,* 628 F.2d at 1262).  Here, far from a "reasonable expectation" or "near certainty," there can be no expectation that Sands will be held in contempt again for violating the district court's 2011 preliminary injunction.  He retired from MCSO in 2013.

Accordingly, Sands cannot establish any basis on which he has a legally cognizable interest in the outcome of this appeal simply because he was found in civil contempt. For that reason, this appeal is moot.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this appeal as moot.

Respectfully submitted,

T.E. WHEELER, II
  Acting Assistant Attorney General

s/ Christine H. Ku
THOMAS E. CHANDLER
CHRISTINE H. KU
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 353-9044

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2017, I electronically filed the UNITED STATES' MOTION TO DISMISS MOVANT-APPELLANT BRIAN SANDS' APPEAL AS MOOT with the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.

I certify that all participants in this case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

s/ Christine H. Ku<br>
CHRISTINE H. KU<br>
  Attorney