IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

No. 16-16659

MANUEL DE JESUS ORTEGA MELENDRES, *et al.*,

Plaintiffs-Appellees

and

UNITED STATES OF AMERICA,

Intervenor-Plaintiff-Appellee

v.

MARICOPA COUNTY; JOSEPH M. ARPAIO,

Defendants

———————————

BRIAN SANDS,

Movant-Appellant

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

———————————

PLAINTIFFS-APPELLEES MOTION TO DISMISS MOVANT-APPELLANT
BRIAN SANDS'S APPEAL

———————————

Pursuant to Federal Rule of Appellate Procedure 27, Plaintiffs-Appellees respectfully move for dismissal of the appeal by Brian Sands—a former Executive Chief of the Maricopa County Sheriff's Office ("MCSO").[1]

Sands, a nonparty, does not have (and has not set forth) any basis for standing to proceed in this appeal. Sands's appeal challenges the district court's civil contempt findings and the injunction entered as a result of those findings.[2] However, Sands has no remaining interest relating to the remedial measures. Notably, he does not challenge the compensatory relief for the civil contempt in which he was implicated, for which the County has assumed responsibility. *See* Dist. Ct. Doc. 1791 at 4 (Ex. 6).[3] The district court did not actually enter any judgments, sanctions, or coercive remedies against Sands in his individual capacity. Moreover, Sands retired from the MCSO in 2013. In other words, Sands

---

[1] Under Ninth Circuit Rule 27-11, a motion for dismissal stays briefing on the merits pending a decision on the motion. Appellees respectfully note that this motion to dismiss should therefore stay the briefing schedule in this case. 9th Cir. R. 27-11(a)(1). Pursuant to Circuit Rule 27-1(2), Appellees have notified opposing counsel and the United States. Counsel for Sands has indicated that Sands anticipates responding to this motion. The United States does not object to the motion to dismiss Sands's appeal. The United States has also filed a motion to dismiss Sands's appeal. 16-16659 Doc. 21.

[2] Sands does not challenge specific provisions of the district court's remedial measures issued through its second supplemental injunction as beyond the Court's authority. Rather, Sands has only filed a notice of appeal as to that order but makes no substantive arguments as to why that order—which places no specific obligations on him individually—should be vacated.

[3] Docket citations herein are to D.C. No. 2:07-cv-02513-GMS unless otherwise noted.

is not required to do anything as a result of the district court's orders, and though he seeks to appeal, he can point to no concrete, non-speculative injury due to those orders. Current Sheriff Penzone, by contrast, does not appeal the remedial measures which now run against him, nor does he seek to overturn the contempt findings.

Not only does Sands lack standing to appeal, but his challenge to the district court's order denying summary judgment is also not within this Court's statutory jurisdiction. Sands cannot appeal the denial of summary judgment predicated on factual questions.

For the reasons explained below, the Court should dismiss this appeal.

## STATEMENT OF FACTS[4]

In 2007, Manuel de Jesus Ortega Melendres and other individually named and organizational Plaintiffs (collectively, "Appellees") filed a lawsuit against Arpaio, the MCSO, and the County, on behalf of a proposed class of, ultimately, "all Latino persons who, since January 2007, have been or will be in the future,

---

[4] The background facts of this case may be found in greater detail in preceding opinions of this Court and the district court. *See, e.g.*, *Melendres v. Arpaio* (*Melendres II*), 784 F.3d 1254 (9th Cir. 2015); *Melendres v. Arpaio* (*Melendres I*), 695 F.3d 990 (9th Cir. 2012); *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2016 WL 2783715 (D. Ariz. May 13, 2016); *Melendres v. Arpaio*, 989 F. Supp. 2d 822 (D. Ariz. 2013). Only the facts relevant to the present motion are set forth herein.

stopped, detained, questioned or searched by MCSO agents while driving or sitting in a vehicle on a public roadway or parking area in Maricopa County, Arizona." ER 930-86; Dist. Ct. Doc. 26 at 24 (Ex. 1). On December 23, 2011, the district court granted partial summary judgment to the class and immediately enjoined the MCSO from detaining people based solely on suspicion or knowledge of unlawful presence in the United States. Dist. Ct. Doc. 494 at 40 (Ex. 2). Defendants (Sheriff Arpaio and the MCSO) unsuccessfully appealed the preliminary injunction. Dist. Ct. Doc. 587 (June 21, 2013 notice of appeal) (Ex. 3); *Melendres I*, 695 F.3d at 994.

On May 24, 2013, following a bench trial, the district court entered judgment against Sheriff Arpaio and the MCSO, holding that the MCSO's policies and practices violated the Fourth and Fourteenth Amendments. ER 514–15. Sands retired from the MCSO in July 2013. ER 669. On October 2, 2013, the district court issued a Supplemental Permanent Injunction/Judgment Order appointing an independent monitor and containing several additional remedial provisions. Dist. Ct. Doc. 606 (Ex. 4). This Court affirmed, in large part, that order. *See Melendres II*, 784 F.3d 1254.

On May 14, 2014, the district court held a hearing during which the MCSO revealed that it had discovered hundreds of personal items that were now in its possession, including driver's licenses and other identity documents, many of

3

which appeared to have been confiscated from members of the Plaintiff class. ER 839. During that hearing, former Chief Deputy Sheridan admitted that it was a common practice for sheriff's deputies to make video and audio recordings of their stops and that there was no agency policy governing such recordings. ER 840. The district court ordered that steps be taken to preserve these recordings, which the court found should have been provided to the Plaintiffs prior to the original trial in this case. ER 841. Shortly thereafter, it became apparent that the MCSO had continued to detain individuals on the basis of unlawful presence alone for at least seventeen months in violation of the district court's original injunction. ER 841–42.

As a result of these and further developments, Plaintiffs moved for an order to show cause as to why the MCSO, Arpaio, and certain present and past employees, including Sands, should not be held in civil contempt for violating court orders. Dist. Ct. Doc. 843 (Ex. 5). On February 12, 2015, the district court issued an order to show cause as to three possible grounds of civil contempt: 1) failure to comply with the district court's preliminary injunction, 2) violation of discovery obligations, and 3) failure to comply with the court's order to preserve video and audio recordings. ER 862. The district court also placed the MCSO on notice that "the adequacy and good faith of their [internal] investigations would be subject to evaluation by the Parties and the Court." ER 293. The order to show

4

cause initiated contempt proceedings against Sands due to potential violation of the preliminary injunction. ER 851.

Sands sought summary judgment on August 6, 2015, on the grounds that laches and res judicata barred Plaintiffs' motion for an order to show cause. ER 348–60. The district court determined that there was no unreasonable delay in Plaintiffs' motion, that there were genuine factual questions as to whether Sands actually had suffered any prejudice due to delay, and that there was no identity of claims for res judicata purposes. ER 313. The court accordingly denied Sands's motion for summary judgment. *Id.*

Following twenty-one days of evidentiary hearings in 2015, the district court issued extensive findings of fact as to Arpaio and several non-party contemnors, including Sands, on May 13, 2016. ER 138–299. Specific to Sands, the district court found that he failed to "[t]ake [r]easonable [s]teps to [i]mplement the [p]reliminary injunction" and consequently was in civil contempt for violation of the preliminary injunction. ER 162. These failures included knowingly allowing the Human Smuggling Unit (HSU) to continue to detain persons in violation of the preliminary injunction and in fact "pressur[ing] the HSU to increase the number of unauthorized aliens . . . arrested." ER 160.

After extensive briefing on remedies for the civil contempt violations, the district court issued a second supplemental injunction in July 2016 based on its

5

broad equitable powers to remedy past wrongs, equitable authority to modify its injunctions in light of changed circumstances, and authority to impose remedial sanctions for civil contempt. ER 4–70.[5] The district court noted, in particular, that "[h]ad [it] had access to the evidence withheld by the MCSO and the evidence to which it led, the Court would have entered injunctive relief much broader in scope" following the original trial in this case. ER 6. The district court's injunctive remedies focused primarily on reforming the internal affairs policies and practices of the MCSO, which the district court found were being used by the MCSO to conceal and avoid responsibility for misconduct against members of the Plaintiff class. ER 9. None of the court's injunctive remedies applied to Sands in an individual capacity, and, in fact, Sands does not challenge any of them specifically.

As a compensatory civil contempt remedy for the violations of the preliminary injunction, on August 19, 2016 the district court ordered that Maricopa County create a victim compensation fund. ER 292; Dist. Ct. Doc. 1791 at 4 (Ex. 6). In doing so, the district court declined to order compensation by the non-party contemnors, including Sands, in their individual capacities. Dist. Ct. Doc. 1791 at 3 (Ex. 6). The court noted that victim compensation "is guaranteed" via the

---

[5] The district court amended its second supplemental injunction twice; Sands appeals the second amended second supplemental permanent injunction/judgment order, issued on July 26, 2016. *See* ER 4–70 for that order.

County. *Id.* Sands therefore owes no compensatory remedy to the victims in his individual capacity, and neither Sands nor the County have sought to appeal the victim compensation order.

Sands, a nonparty now retired from the MCSO for over three years, has appealed the second amended second supplemental permanent injunction/judgment order ("second supplemental injunction") and the January 2016 order denying summary judgment. He argues on appeal that the district court erred in its civil contempt finding, that a civil contempt citation against him is not equitable, and that the district court erred in denying summary judgment notwithstanding his laches argument.

## ARGUMENT

Non-party standing to appeal is limited to "exceptional circumstances." *Hilao v. Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004) (quoting *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002)). Because Article III's standing requirement applies to every stage of litigation, an individual seeking appellate review must establish "that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (citation omitted); *see also Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1395–96 (9th Cir. 1992) (citations omitted) (noting that appellate

standing requires "a personal injury that is fairly traceable to the appellee's conduct"). "[C]onjectural or hypothetical" injuries are not sufficient, nor is "merely speculative" redressability enough. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). This showing is necessary for each form of relief requested. *Id.* at 185. Sands is not a party to this litigation, has no interest that would be at issue in future proceedings, and has set forth no direct, non-speculative injury that would be redressable by this Court. Sands does not have standing for any of the relief that he now seeks.[6]

Moreover, with respect to the appeal of the denial of summary judgment, as explained *infra* Part III this Court lacks jurisdiction to consider that appeal. Orders denying summary judgment are typically not appealable, *see Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014), and the district court's determination regarding laches, predicated on factual questions, falls within that general rule.

---

[6] Because mootness is, essentially, "standing set in a time frame," *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (citation omitted), in any instance where the Court determines that Sands would have standing but for his retirement from the MCSO, the appeal is now moot. Though there are exceptions to mootness that do not apply to standing, there is no reason to think that any of them apply in this circumstance. *See Friends of the Earth*, 528 U.S. at 190–91 (describing mootness exceptions such as "capable of repetition, yet evading review").

I.   **Sands Lacks a Requisite Connection to Challenge the Remedial Measures Ordered by the Second Supplemental Injunction.**

While Sands's notice of appeal indicates that he is appealing the district court's second supplemental injunction, he makes no arguments as to why such relief was improper in his opening brief. Nonetheless, Sands lacks standing to challenge that order. As demonstrated below, Sands has no grounds for standing predicated on the civil contempt citations. But, more fundamentally, Sands has no requisite connection to the injunctive relief that he purports to challenge: he simply has no interest in the matter any greater from that of any resident of Maricopa County. The district court's second supplemental injunction runs only against Sheriff Penzone in his official capacity and places no obligations on Sands as an individual. As a long-retired, private individual, Sands has absolutely no connection to requirements that the MCSO implement the remedial measures that he purports to challenge.

Without such a connection, Sands's appeal must be dismissed. Injury in fact requires that the challenged relief affect the appellant "in a 'personal and individual way.'" *See Hollingsworth*, 133 S. Ct. at 2662 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). Neither the coercive remedial civil contempt sanctions issued by the district court nor the compensatory remedies—which Sands has not challenged—do so. Because he is retired, Sands has no ongoing affirmative responsibility as an employee of the Sheriff's Office to

bring the Office into compliance with the coercive remedial order. *Cf.* Fed. R. Civ. P. 65(d)(2)(B)–(C) (specifying the parties' employees and those "in active concert or participation" as bound by an injunction on receiving notice). And no compensatory remedies run to Sands: he bears no individual responsibility for the victim compensation fund created to remedy the violations of the preliminary injunction. Dist. Ct. Doc. 1791 at 3 (Ex. 6). Because the County has assumed responsibility for the compensation for preliminary injunction violations, even had Sands appealed the compensatory remedies, they likewise would provide no injury sufficient for appeal. *See Union of Prof'l Airmen v. Alaska Aeronautical Indus., Inc.*, 625 F.2d 881, 882–84 (9th Cir. 1980) (holding that non-party contemnor could not appeal where corporation assumed entire responsibility for payment of contempt fine).

## II. Sands Lacks Standing to Seek to Vacate the District Court's Contempt Findings.

Sands has also failed to establish any concrete and particularized injury he suffers that would be redressable by vacating the district court's contempt findings of fact. The civil contempt citations standing alone confer no basis for standing. The contempt findings place no obligations on Sands himself, and he has established no other non-speculative and redressable injury due to the district court's findings, as Article III standing requires. *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976) (explaining that, for standing, a litigant must

show that a decision in his favor is "likely" to redress his purported injury); *see also Friends of the Earth*, 528 U.S. at 180–81; *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002). And the underlying factual findings, untethered from the ordered relief, similarly can provide no basis for vacatur. *See Nat. Res. Def. Council v. Gutierrez*, 457 F.3d 904, 905–06 (9th Cir. 2006) (finding an absence of appellate standing where litigants "challenge[d] the district court's legal rulings in the abstract" but did not seek to overturn ordered relief).[7]

### A. A Civil Contempt Finding Does Not Provide a Basis for Standing Where, as Here, an Appellant Has No Continued Obligations Pursuant to the Civil Contempt Order.

Non-party standing to appeal a civil contempt finding is restricted to circumstances in which the nonparty is required to comply with certain coercive remedies or pay compensation—in other words, "matters in which [the nonparty] has [a] legitimate interest." *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) (explaining that arguments regarding the district court's personal jurisdiction over the parties or a statute of limitations requiring dismissal of the suit would be beyond the "legitimate interest" of a non-

---

[7] Interests that do not suffice to prevent a case from becoming moot are *a fortiori* "insufficient to confer standing," because "[o]therwise, the case would immediately be moot." *Jackson v. Cal. Dep't of Mental Health*, 399 F.3d 1069, 1075 (9th Cir. 2005). Consequently, cases finding mootness notwithstanding an asserted interest likewise indicate a lack of standing based on that interest. *See id.* This motion accordingly cites mootness cases as relevant to analysis of standing interests.

11

party witness in civil contempt); *see also In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 544 (9th Cir. 1996) (finding that the Republic of the Philippines, while not an actual party, could appeal the court's injunction because it was expressly enjoined from taking certain actions by that injunction and incurred an ongoing risk of contempt sanctions for failing to abide by it). Again, because Sands has retired from the Maricopa County Sheriff's Office and has no continued responsibility for bringing the agency into compliance with the district court's coercive civil contempt remedies, he has no standing to bring this appeal.

Civil contempt is not a punishment in itself but, rather, is a remedy for the benefit of the party injured by the contempt: "to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (citations omitted). The mere fact of a civil contempt citation alone is not automatically sufficient for appellate standing.

Rather, cases in which civil contempt permits non-party standing involve— unlike this case—a civil contempt judgment that places a continued obligation upon the non-party contemnor to comply pursuant to the coercive remedy or to pay compensation. For example, a civil contempt order that fines the non-party contemnors for each day of noncompliance and for which the non-party contemnors remain liable is appealable. *See, e.g.*, *U.S. Catholic Conference*, 487

U.S. at 75–76. But a nonparty held in contempt lacks the requisite legitimate interest to appeal that ruling where another party or contemnor has assumed responsibility for the contempt remedy. For instance, this Court found that a nonparty corporate president's appeal of a contempt order was moot where both the president and the corporate entity (a party to the litigation) were adjudged in civil contempt and ordered to pay a fine, but the corporate entity paid the entirety of the fine. *Union of Prof'l Airmen*, 625 F.2d at 882–84; *see also In re Grand Jury Subpoena Duces Tecum, 91-02922*, 955 F.2d 670, 672 (11th Cir. 1992) (holding that for "purely coercive civil contempt, a contemnor's compliance . . . moots" any challenge to the "contempt adjudication"); *cf. In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 747 F.2d 1303, 1305–06 (9th Cir. 1984) (explaining that, where a party would ultimately pay sanctions that were imposed not on the party but on a nonparty, "[t]he contempt order . . . d[id] not place [the nonparty] directly at risk").

Like the nonparty in *Union of Professional Airmen*, Sands has been "relieved . . . of any liability under the contempt order" and consequently has "no interest in" continued litigation of that order. *Union of Prof'l Airmen*, 625 F.2d at 884. As described *supra* Part I, due to Sands's retirement, he has no responsibility to ensure the MCSO's compliance with the coercive injunctive relief, and he has no individual obligation regarding the compensatory remedial scheme. In the

13

absence of any continued connection to the remedies ordered by the district court, Sands lacks any plausible direct stake to maintain an appeal.

> **B. Sands's Civil Contempt Citations Do Not Confer Standing Based on Speculative Harms.**

Without any remaining direct legitimate interest stemming from the contempt remedies, any reputational or stigmatic harm as a collateral consequence of the contempt citations—which Sands has not advanced here—would also be insufficient to confer standing. As the Supreme Court has previously explained in the contempt context, "the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy" where the issue the litigant pursues is otherwise moot. *St. Pierre v. United States*, 319 U.S. 41, 43 (1943) (finding mootness notwithstanding allegations of continued reputational harm by a contemnor who had completed his sentence); *see also Spencer v. Kemna*, 523 U.S. 1, 16 n.8 (1998) (explaining that the Court has never found "interest in vindicating . . . reputation" to be enough to avoid mootness, including in the criminal misdemeanor context).

Even sanctions arguably more severe than civil contempt do not provide standing based on reputational harm alone. For example, a court's designation of an individual as a sexually violent predator is insufficient to confer standing due to reputational harm. *Jackson*, 399 F.3d at 1075 (explaining that even though "some of this harm could be remedied by a judgment . . . not all injuries amount to

14

injuries in fact"). Where a court's determination "of the legal issues underlying" Rule 11 sanctions would have no bearing on payment of those sanctions due to a settlement agreement, the sanctions issue is moot, despite an asserted reputational harm. *Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1112 (9th Cir. 1990). And the Supreme Court has repeatedly affirmed that collateral reputational consequences from judgments against individuals are not enough for continued Article III injury in fact. *Kemna*, 523 U.S. at 16 n.8 (collating cases); *see also Foretich v. United States*, 351 F.3d 1198, 1212 (D.C. Cir. 2003) (explaining that "where reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit," that reputational harm "cannot satisfy the requirements of Article III"). It has specifically found that reputational harm from contempt is alone not enough to sustain litigation. *St. Pierre*, 319 U.S. at 43. Any stigmatic harm or associated consequences that Sands might point to as grounds for standing would therefore be unavailing. Sands has put forward no other basis for standing.

### III. This Court Lacks Jurisdiction Over Sands's Appeal of the Order Denying Summary Judgment.

Sands's appeal of the district court's denial of summary judgment is beyond this Court's jurisdiction not only because Sands lacks Article III standing, as explained *supra* Parts I and II, but also because the appeal of that order is not within this Court's statutory appellate jurisdiction. An order denying summary judgment is "[o]rdinarily" not a "'final decision[]' subject to appeal" for purposes

of 28 U.S.C. § 1291. *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) (quoting § 1291); *see also McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 955 n.4 (9th Cir. 2011) (citation omitted) (finding denial of summary judgment "not reviewable on appeal"). Consequently, this Court typically cannot review such an order following a trial on the merits—such as the trial in the contempt proceedings at issue here. *See Escriba*, 743 F.3d at 1243 (citation omitted). And, while Sands cites 28 U.S.C. § 1292(a)(1) in addition to § 1291 as a basis for this Court's jurisdiction, the same considerations apply in the interlocutory context. *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) (explaining that interlocutory review is typically not available for denials of summary judgment).

Sands's appeal is not the exceptional case in which this type of order may be reviewed on appeal—where the district court's error of law led to the denial of a motion it otherwise "would have [been] required . . . to grant." *Escriba*, 743 F.3d at 1243 (quoting *Banuelos v. Constr. Laborers' Tr. Funds for S. Cal.*, 382 F.3d 897, 902 (9th Cir. 2004)). The district court's determinations regarding Sands's laches claim, that Plaintiffs had not unreasonably delayed in seeking an order to show cause and that "factual issues remain[ed]" as to any prejudice to Sands, implicated questions of fact and were not purely legal. ER 313. Sands's appeal of the denial of summary judgment must be dismissed for lack of jurisdiction as well as lack of standing.

## CONCLUSION

Because Sands cannot establish standing and cannot appeal the denial of summary judgment, this Court should dismiss the appeal.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: June 2, 2017 | /s/ Andre Segura |

Andre Segura
Cecillia D. Wang
ACLU Foundation
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2676
Facsimile: (212) 549-2654
asegura@aclu.org

Kathryn L. Huddleston
ACLU Foundation of Arizona
3707 N. 7th Street, Ste. 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
Facsimile: (602) 650-1376
khuddleston@acluaz.org

Anne Lai
401 E. Peltason, Suite 3500
Irving, CA 92697
Telephone: (949) 824-9894
Facsimile: (949) 824-0066
alai@law.uci.edu

Stanley Young
Hyun Sik Byun
Covington & Burling, LLP
1 Front Street
San Francisco, CA 94111
Telephone: (415) 591-7066
Facsimile: (415) 955-6566
syoung@cov.com

Counsel for *Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I, Andre Segura, hereby certify that on June 2, 2017 copies of this Motion to Dismiss Movant-Appellant's Appeal were electronically filed via the Court's CM/ECF system.

Dated: 06/02/2017                    /s/ Andre Segura
                                     Andre Segura
                                     ACLU Foundation
                                     125 Broad Street
                                     New York, NY 10004
                                     Telephone: (212) 549-2676
                                     Facsimile: (212) 549-2654
                                     asegura@aclu.org