No. 16-16659

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

MANUEL DE JESUS ORTEGA MELENDRES, on behalf

of himself and all others similarly situated, et al.,

Plaintiffs – Appellees,

UNITED STATES OF AMERICA,
Intervenor-Plaintiff-Appellee,

v.

JOSEPH ARPAIO, et al.,

Appellants,
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA AT PHOENIX

No. 2:07-CV-02513 (Honorable G. Murray Snow, United States District Judge)
_____

**APPELLANT SANDS' RESPONSE TO UNITED STATES MOTION TO
DISMISS APPELLANT BRIAN SANDS' APPEAL AS MOOT**

**AND**

**APPELLANT SAND'S MOTION FOR VACATUR IF HIS APPEAL IS DEEMED
MOOT**
_____

                                       M. Craig Murdy (State Bar No. 011016)
                                       Email: Craig.Murdy@lewisbrisbois.com
                                       **LEWIS BRISBOIS BISGAARD & SMITH LLP**
                                       2929 North Central Avenue, Suite 1700
                                       Phoenix, Arizona 85012-2761
                                       Telephone (602) 385-1040
                                       *Attorneys for Non-Party Appellant Brian Sands*

Pursuant to Fed. Rules App. Proc. 27 and Circuit Rule 27-1 Appellant Brian Sands submits the following response to the United States of America's Motion to Dismiss Movant-Appellant Brian Sands' Appeal as Moot ("USA Motion to Dismiss"). Pursuant to Fed. Rules App. Proc. 27(a)(3)(B) Sands requests that if this Court deems his appeal moot that the Court follow "established practice" and vacate the district court's Findings of Fact and remand for dismissal of the Order to Show Cause as the same apply to Sands.

This Response and Motion for Vacatur are supported by the following Memorandum of Points and Authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**BACKGROUND**

Sands does not contest the "Background" set forth in the USA's Motion to Dismiss. Sands would add to the USA's "Background," that his employer, Maricopa County – Maricopa County Sheriff's Office, was a party to the underlying action, was subject to the Order to Show Cause ("OSC"), participated in the OSC hearings, and is responsible for paying compensation to persons harmed by the contemptuous conduct.

The USA's "Background" failed to mention that the district court's Findings of Fact also provided:

1. That Sheriff Arpaio understood the preliminary injunction order and simply refused to abide by the same. Exhibit 1, Findings of Fact, p. 5 – 16.

2. "Sheriff Arpaio Did Not Change the MCSO's Operations Against the Advice of Chief Sands." Exhibit 1, Findings of Fact, p. 10, line 10.

3. During a meeting shortly after the district court issued the preliminary injunction "Sands told Arpaio that the MCSO would have to curtail immigration enforcement operations including saturation patrols." Exhibit 1, Findings of Fact, p. 10, line 14 - 16.

4. "Sands also told Arpaio that all MCSO deputies should learn about the preliminary injunction, but Arpaio instructed Sands to only disseminate information regarding the preliminary injunction to the HSU." Exhibit 1, Findings of Fact, p. 10, line 16 – 18.

5. "At yet another meeting, Chief Sands told Sheriff Arpaio that the preliminary injunction required that the MCSO release unauthorized immigrants for whom the MCSO had no state charge instead of taking them to ICE or the Border Patrol." Exhibit 1, Findings of Fact, p. 10, line 25 – 27.

The basic chronology applicable to the USA's Motion to Dismiss and Sand's Motion for Vacatur are as follows:

1. In December 2007, Plaintiffs filed suit against Maricopa County and Sheriff Joseph Arpaio for allegedly violating their constitutional rights. Exhibit 2, Complaint.

2. In September 2008, Plaintiffs filed an Amended Complaint which named Maricopa County Sheriff's Office as a defendant. Exhibit 3, First Amended Complaint.

3. In December 2011, the district court issued a preliminary injunction prohibiting certain practices by Maricopa County Sheriff's Office. Exhibit 4, Order.

4. A trial was held in 2012, and the district court subsequently entered a permanent injunction that was largely affirmed by this Court. *See Melendres v. Arpaio*, No. CV-07-02513, 2013 WL 5498218 (D. Ariz. Oct. 2, 2013), aff'd in part, vacated in part, 784 F.3d 1254 (9th Cir. 2015).

5. Sands retired from the MCSO in July 2013. Exhibit 1, Findings of Fact, p. 21, line 3.

6. In August 2015, the district court entered an Order granted the USA's unopposed motion to intervene. Exhibit 5, Order.

7. In January 2015, Plaintiff's filed a Memorandum of Law and Facts re Contempt Proceedings and Request for Order to Show Cause. Exhibit 6. The Memorandum asserted that Sands "should be subject to contempt proceedings for abetting Defendants' violation of the December 23, 2011 preliminary injunction." Exhibit 7, at p. 18, line 3 – 8.

8. In February 2015, the district court issued an Order to Show Cause ("OSC") why Maricopa County Sheriff's Office, Arpaio, and other non-parties, including Sands, should not be held in civil contempt. Exhibit 7. The OSC provided that "[a]fter an appropriate hearing, the Court will determine whether these individuals have committed contempt of court and the sanctions for any such violations." Exhibit 7, at p. 26, line 7 – 8.

9. In April September, October and November 2015 the district court held 21 days of evidentiary hearing regarding the OSC. Exhibit 1, Findings of Fact, p. 1 line 19 – 20.

10. On Friday May 13, 2016, the district court entered Findings of Fact with regard to the OSC. Exhibit 1.

11. The district court's Findings of Fact provided in part that Sands is "Liable For Civil Contempt for Knowingly and Intentionally Failing to Comply with the Preliminary Injunction." Exhibit 1, at p. 20, line 26 - 28.

12. In July 2016, Plaintiffs and Defendants submitted the Parties Joint Notice of Stipulated Judgment for the Victim Compensation Plan. Exhibit 8, without attachments.

13. In August 2016, the district court issued an Order re Victim Compensation which noted that the "County is a willing participant to provide for compensation" and ordered the County Board of Supervisors to create a fund of $500,000 to pay claims adjudicated in favor victims. Exhibit 9.

14. The Order re Victim Compensation expressly declined to hold the individual contemnors, including Sands, jointly and severally liable for payment of the victims' compensation. Exhibit 9, at p. 3 line 7 - 17.

15. On September 16, 2016 Sands filed a Notice of Appeal from the Second Amended Supplemental Permanent Injunction, the subordinate interlocutory orders, and the order denying his motion for summary judgment. Exhibit 10.

16. On March 23, 2017, Sands filed his opening appellate brief.

**LEGAL ARGUMENT**

<u>The "Established Practice" When a Civil Suit Becomes Moot on Appeal is to Vacate the District Court's Judgment and Remand for Dismissal of the Complaint</u>

5

Sands acknowledges "[a] long line of precedent holds that once a civil contempt order is purged, no live case or controversy remains for adjudication." *United States v. Oakland Cannabis Buyers' Coop.*, 190 F.3d 1109, 1113 (9th Cir. 1999). The USA argues that because Sands retired from MCSO *and* is not liable for payment of the victims' compensation, there is no live case or controversy for adjudication subject to appellate review. USA Motion To Dismiss at p. 2, and 9.

When a civil suit becomes moot pending appeal, this Court has the authority to "direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." *Camreta v. Greene,* 563 U.S. 692, 712, 131 S. Ct. 2020, 2034 – 2035, 179 L. Ed. 2d 1118, 1136 (2011) citing 28 U.S.C. § 2106. The "'established' (though not exceptionless) practice in this situation is to vacate the judgment below. *Id. citing U.S. v. Munsingwear*, 340 U.S. 36, 39, 71 S. Ct. 104, 95 L. Ed. 36 (1950), and *Alvarez v. Smith*, 558 U.S. 87, 94, 130 S. Ct. 576, 581, 175 L. Ed. 2d 447, 453 (2009), *see also Log Cabin Republicans v. U.S.,* 658 F.3d 1162, 1167 (9th Cir. 2011) ("The 'established' practice when a civil suit becomes moot on appeal is to vacate the district court's judgment and remand for dismissal of the complaint.").

The Supreme Court has emphasized that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, . . ., ought not in fairness be forced to acquiesce in" that ruling. *Camreta,* 131 S. Ct. at 2035, citing *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership.*, 513 U.S. 18, 25, 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994).

6

"The equitable remedy of vacatur ensures that "those who have been prevented from obtaining the review to which they are entitled [are] not . . . treated as if there had been a review." *Camreta,* 131 S. Ct. at 2035, citing *Munsingwear*, 340 U.S. at 39. "The point of vacatur is to prevent an unreviewable decision 'from spawning *any legal consequences*,' so that no party is harmed by what we have called a 'preliminary' adjudication." *Id.* (italics added) citing *Munsingwear*, 340 U.S. at 40-41. "Without vacatur, the lower court's judgment, 'which in the statutory scheme was only preliminary,' would escape meaningful appellate review thanks to the 'happenstance' of mootness. *NASD Dispute Resolution, Inc. v. Judicial Council,* 488 F.3d 1065, 1068 (9th Cir. 2007), citing *Munsingwear,* 340 U.S. at 39.

The jurisdiction of federal courts is limited to actual "cases and controversies." U.S. Const. art. III, § 2, cl. 2. Generally, an "actual controversy" must exist at every stage of appellate or certiorari review. *Pub. Utils. Comm'n of California v. Fed. Energy Reg. Comm'n*, 100 F.3d 1451, 1458 (9th Cir. 1996). Due to this limitation, federal courts have no authority to decide a "moot" case. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70, 104 S. Ct. 373, 78 L. Ed. 2d 58 (1983). "[A] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Pub. Utils. Comm'n*, 100 F.3d at 1458. If the court is unable to grant adequate relief, it lacks jurisdiction, and the case must be dismissed. *Id*.

There are, however, four exceptions that will allow a federal court to assert jurisdiction over a moot case. *Felster Publ'g v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir. 2005). These exceptions are: 1) collateral legal consequences, 2) wrongs

7

capable of petition yet evading review, 3) voluntary cessation by the defendant, and 4) class actions where the named party ceases to represent the class. *Id*.

In *Burrell*, this Court addressed "collateral legal consequences that survive after the plaintiff's primary injury has been resolved." 415 F.3d at 998. This Court noted that "[w]hile [appellant] gives short shrift to this argument in his brief, the implication is that the 'taint' of the earlier judgments comes in the form of their preclusive effect on future claims involving the [disputed issue]." 415 F.3d at 998 – 999.

In *Burrell* this Court noted that: "[appellant] may not invoke as an exception to the mootness doctrine the specter of continuing legal harm from res judicata or collateral estoppel arising from his mooted claims when such harm is merely hypothetical and speculative"; that appellant "cite[s] no collateral continuing legal disputes to which the [mooted claim] has given rise, other than vaguely referring to the enduring 'taint' of the lower courts judgments"; and that "the speculative contingency that such issues might arise afford[s] no basis for our passing on the substantive issues." 415 F.3d at 999.

This Court held that "[b]ecause [appellant] has not shown that 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,' his request for relief does not qualify for the collateral consequences exception to the mootness doctrine." *Id.*

Notwithstanding the foregoing this Court noted:

It is well established, however, that collateral estoppel engenders legal consequences from which a party may continue to suffer harm after a claim has

8

been rendered moot. The Supreme Court has recognized that because of the unfairness of the enduring preclusive effect of an unreviewable decision in the case of a civil action that has become moot on appeal, "*the established practice of the Court . . . is to reverse or vacate the judgment below and remand with a direction to dismiss.*" *United States v. Munsingwear*, *Inc*. 340 U.S. 36, 39, 95 L. Ed. 36, 71 S. Ct. 104 (1950). While *Munsingwear's* directive was only dictum, the Supreme Court has since affirmed this practice as it relates to mootness that arises by "happenstance." *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 n.3, 130 L. Ed. 2d 233, 115 S. Ct. 386 (1994) ("We thus stand by *Munsingwear's* dictum that mootness by happenstance provides sufficient reason to vacate."). This practice is, nonetheless, limited.

415 F.3d at 999 (italics added).

This Court observed that "*U.S. Bancorp* makes clear that the touchstone of vacatur is equity [and that] equity counsels against vacatur, 'when the appellant has by his own act caused the dismissal of the appeal.'" 415 F.3d at 999. In that regard, "[t]he primary inquiry, then, 'is whether the party seeking relief from the judgment below caused the mootness by voluntary action.'" *Id.*

Addressing mootness by voluntary action, this Court noted:

In this case, [appellant], the party seeking relief from the judgment below, did not render his appeal moot by voluntary action or by any act of his own. . . . The bankruptcy court's judgment interpreting the Songwriter's and Producer's agreements and the district court's judgment affirming the same would be

9

unreviewable were we to dismiss the appeal without vacating the judgments below. [Appellee], not [appellant], rendered this appeal moot when the bankruptcy court denied discharge of [appellee's] debt because of [appellee's] failure to comply with conditions of settlement with the bankruptcy trustee. [Appellant] has therefore not surrendered his claim to the equitable remedy of vacatur and should not be penalized by an unfair application of collateral estoppel, when his case has been mooted through no act of his own. *Dilley*, 64 F.3d at 1370 ("'A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.'") (quoting *U.S. Bancorp*, 513 U.S. at 25).

<u>Sands is Subject to Collateral Legal Consequences Vis-À-Vis Collateral Estoppel</u>

"Under collateral estoppel principles, once an issue is actually litigated and necessarily determined, that determination is conclusive in subsequent suits based on a different cause of action but involving a party or privy to the prior litigation." *ITT Rayonier,* 627 F.2d at 1000, citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S. Ct. 645, 649 n. 5, 58 L. Ed. 2d 552 (1979). "In the absence of 'countervailing statutory policy,' collateral estoppel bars relitigation of factual questions or mixed questions of law and fact." *ITT Rayonier,* 627 F.2d at 1000, citing *Brown v. Felsen*, 442 U.S. 127, 139, n. 10, 99 S. Ct. 2205, 2213, n. 10, 60 L. Ed. 2d 767 (1979).

The doctrine of privity extends the conclusive effect of a judgment to nonparties who are in privity with parties to an earlier action. *ITT Rayonier*, 627 F.2d at 1003. "Courts are no longer bound by rigid definitions of parties or their privies for purposes of

applying collateral estoppel or res judicata." *Id. citing Jackson v. Hayakawa*, 605 F.2d 1121, 1126 (9th Cir. 1979), cert. denied, 445 U.S. 952, 100 S. Ct. 1601, 63 L. Ed. 2d 787 (1980). "*One who is not a party of record may be bound if he had a sufficient interest and participated in the prior action.*" *Id.* (italics added) citing *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed. 2d 210 (1979).

Sands is subject to collateral legal consequences if the district court's Findings of Fact are not subject to review. Although Sands was not a party to the underlying action, both he and his employer Maricopa County/MCSO were parties to the OSC and the OSC hearing and participated in the same. Consequently, in any future litigation between Maricopa County/MCSO and Sands regarding his conduct with regard to the preliminary injunction, Sands may be subject to collateral estoppel with regard to the district court's finding that that he knowingly and intentionally violated the preliminary injunction. As the USA's Motion to Dismiss notes, the district court's findings of fact include conclusions that Chief Sands knowingly and intentionally failed to comply with the preliminary injunction. USA Motion to Dismiss, p. 5.

In *Parker v. United States*, 153 F.2d 66, 70 (1st Cir,. 1946) the court analogized the imposition of a compensatory fine in civil contempt to a tort judgment for damages caused by wrongful conduct. "Where . . . parties join together to evade a judgment, they become jointly and severally liable for the amount of damages resulting from the contumacious conduct." *Fed. Trade Comm. v. Leshin*, 618 F.3d 1221, 1236 – 7 (11th Cir. 2010) *citing NLRB v. Laborers' Intern'l Union*, 882 F.2d 949, 955 (5th Cir. 1989), *Fed. Trade. Comm. v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996), and *Connoly v.*

11

*J.T. Ventures,* 851 F.2d 930, 934-5 (7th Cir. 1988). In *Leshin,* joint and several liability was imposed as "[t]he records supports the finding that the contempt defendants together invaded the injunction." 618 F.3d at 1236 – 7.

Arizona law recognizes that a principal/employer is entitled to contribution or indemnity from an agent/employee for damages to a third person caused by agent/employees unauthorized acts. *See e.g. Wiggs v. City of Phoenix*, 198 Ariz. 367, 371 (recognizing that an employer may seek indemnity from an employee in cases of pure vicarious liability, or contribution in cases in which the employer has some degree of independent liability); see also *Radcliffe v. Hilton Inn*, 119 Ariz. 306, 308 citing Restatement of Restitution 96; *Solar-West, Inc. v.* Falk, 141 Ariz. 414, 418 (1984) citing , Restatement Second of Agency 401 ("an agent is subject to liability for loss caused to the principal by an breach of duty"); comment *d* to Restatement of Agency 401 ("a servant who, while acting within the scope of employment, negligently injuries a third person, although personally liable to such person, is also subject to liability to the principal if the principal is thereby required to pay damages"); comment *e* to Restatement of Agency 401 ("If an agent acts contrary to the principal's orders or if he fails to act as directed in the control of the principal's things, and a loss to the principal results from such disobedience or failure to act, the agent is subject to liability for such loss if the loss is within the risk created by the disobedience"); and Restatement (Third) Agency 7.02 comment *b* ([i]f an agent acts contrary to the principal's instructions, or otherwise acts without actual authority, and the principal suffers loss as a result, the agent has breached the agents duty to the principal and is subject to liability to the principal").

One could certainly envision a contribution or indemnity action by Maricopa County/MCSO against Sands based on a knowing and intentional violation of the district court's preliminary injunction. *In fact, Maricopa County is arguing before this Court that: a) it lacks the legal authority to fund remedies for willful or intentional conduct; b) that willful and intentional violations of lawful court orders is not within the Sheriff Arpaio and Sands' scope of authority or employment.* Exhibit 11 Defendant/Appellant County of Maricopa, Arizona's Opening Brief (*Melendres v. Maricopa County*, No. 16-16661) at p. 22 – 26.

Pursuant to the principals of collateral estoppel, Sands would be precluded from re-litigating the issue of whether he knowingly and intentionally violated the preliminary injunction in the context of Maricopa County/MCSO's contribution or indemnity action. Fortunately, the Supreme Court has "recognized that because of the unfairness of the enduring preclusive effect of an unreviewable decision in the case of a civil action that has become moot on appeal, "*the established practice of the Court . . . is to reverse or vacate the judgment below and remand with a direction to dismiss*." Burrell, 415 F.3d at 999, citing *United States v. Munsingwear, Inc.* 340 U.S. 36, 39, 95 L. Ed. 36, 71 S. Ct. 104 (1950).

<u>Sands Did Not Voluntarily Render His Appeal Moot</u>

The only issue that remains is whether Sands voluntarily rendered his appeal moot. *See Burrell*, 415 F.3d at 999 ("The touchstone of vacatur is equity. . . . And equity counsels against vacatur, when the appellant by his own act caused the dismissal of the

13

appeal."(citations and internal quotes omitted)). Sands has not voluntarily rendered his appeal moot.

Sands anticipates that the USA will argue that Sands voluntarily rendered his appeal moot by retiring from MCSO in July 2013. However, any such argument fails to recognize that the issue pending before the district court was Sands' contempt, the nature and extent of the compensation to be paid for the harm caused by the contemptuous acts, and whether Sands was liable for the compensation. The district court ultimately found that Sands knowingly and intentionally violated the preliminary injunction, and that the persons harmed by his contempt were entitled to compensation. Notwithstanding the same, the district court decided that Sands should not be jointly and severally liable for the compensation to be paid to the victims.

As the district court noted "[c]ivil contempt sanctions are imposed to coerce obedience to a court order, or to compensate injured parties for harm resulting from the defendant's contemptuous behavior, or both." Exhibit 8 at p. 25, line 6 – 8. Although Sands' retirement may have rendered the issue of coerced obedience moot, his retirement did not moot the issue of whether he was in contempt, the nature and extent of any compensation due to the victims, and whether he was liable for the same.

"[I]n all actions before a federal court, the necessary and constitutional predicate for any decision is a determination that the court has jurisdiction – that is the power – to adjudicate the dispute. *Toumajian v. Frailey*, 135 F.3d 648 (9th Cir. 1998). Federal courts are required sua sponte to examine jurisdictional issues. *B.C. v. Plumas Unified School Dist.*, 192 F.3d 1260 (9th Cir. 1999).

The OSC hearing was held in April, September, October of 2015, i.e. after Sands had retired in July 2013. Thus, if Sands is appeal is moot because he was not subject to being coerced into compliance subsequent to July 2013, there was no claim or controversy before the district court. If there was no claim or controversy before the district court, the district court lacked jurisdiction and was required to dismiss the action. Fed. Rules Civ. Proc. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). Lack of subject matter jurisdiction is never waived and may be raised by either party or the court at any time – even for the first time on appeal. *Henderson ex. rel. Henderson v. Shinseki*, 526 U.S. 428, 131 S.Ct. 1197, 1202, 197 L.Ed. 159 (2011), and *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 594 – 595 (9th Cir. 1996).

Notwithstanding the fact that he had retired, the issue of whether Sands was in contempt, and subject to being held liable for compensation to those harmed by his alleged contempt was a case or controversy that provided the district court with subject matter jurisdiction. The fact that district court elected not to hold Sands liable for compensation to the victims was mere happenstance, and not attributable to any voluntary act by Sands.

The present case is one in which happenstance, and not an act by Sands potentially rendered his appeal moot. Sands did not settle the case, nor did he fail to appeal. Rather, the district court's unilateral decision not to hold him liable for compensation attributable to his alleged contempt resolved the controversy. This was not Sands doing. In *Burrell* this Court held that a dismissal by the bankruptcy court due to the appellee's "failure to

15

comply with conditions of settlement with the bankruptcy court trustee" rendered appellant's appeal moot. 415 F.3d at 1000. This Court held that [appellant] has therefore not surrendered his claim to the equitable remedy of vacatur and should not be penalized by an unfair application of collateral estoppel, when his case has been mooted through no act of his own." *Id.* citing *Dilley v. Gunn,* 64 F.3d 1365, 1370 ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, out not in fairness be forced to acquiesce in the judgment.") (quoting *U.S. Bancorp*, 513 U.S. at 25). The district court's Findings of Fact have not been rendered unreviewable by any act, choice, or decision by Sands. Sands preserved his right to appeal by filing a Notice of Appeal, and filed an Opening Brief. Sands did not seek dismissal of his appeal. Any dismissal of his appeal as being moot will be based on the happenstance of the district court not holding in liable for compensation to be paid to the victims, and the fact that the USA filed a motion to dismiss.

<u>Union of Professional Airmen v. Alaska Aeronautical Industries, Inc. is Distinguishable</u>

Citing *Union of Prof. Airmen v. Alaska Aero. Ind., Inc*., 625 F.2d 881 (9th Cir. 1980) USA's motion to dismiss argues that "[t]here is also no live case or controversy where a civil contempt fine has been satisfied by another party." USA Motion to Dismiss, p. 11. In *Union,* the district court "issued an order adjudging both [Alaska Aeronautical Industries, Inc. and its president] to be in civil contempt and ordered them to pay damages." Alaska Aeronautical paid the damages. This Court noted that Alaska Aeronautical's payment of the damages "relieved [employee] of any liability under the

16

contempt order" and dismissed the employee's appeal on the basis that the same was moot." 625 F.2d at 884. However, the issue of collateral legal consequences in the context of collateral estoppel was not raised or addressed in this Court's opinion. Consequently, *Union* is distinguishable from the Sand's appeal, and is not applicable to the issue of whether Sands is entitled to vacatur of the district court's Findings of Fact and Order to Show Cause as the same apply to him.

**CONCLUSION**

The Supreme Court has recognized and emphasized that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, . . ., ought not in fairness be forced to acquiesce in" that ruling. *Camreta,* 131 S. Ct. at 2035, citing *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*., 513 U.S. 18, 25, 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994).

"The equitable remedy of vacatur ensures that "those who have been prevented from obtaining the review to which they are entitled [are] not . . . treated as if there had been a review." *Camreta,* 131 S. Ct. at 2035, citing *Munsingwear*, 340 U.S. at 39 "Without vacatur, the lower court's judgment, 'which in the statutory scheme was only preliminary,' would escape meaningful appellate review thanks to the 'happenstance' of mootness. *NASD Dispute Resolution, Inc. v. Judicial Council,* 488 F.3d 1065, 1068 (9th Cir. 2007), citing *Munsingwear,* 340 U.S. at 39.

Sands sought review of the merits of the district court's adverse Findings of Fact. Frustrated by the vagaries of circumstance, and happenstance, Sands ought not in fairness be forced to acquiesce in the Findings of Fact. The collateral legal consequences

17

attributable to the Findings of Fact in any future contribution or indemnity action by Maricopa County/MCSO against Sands requires vacatur of the Findings of Fact and dismissal of the Order to Show Cause as the same apply to Sands.

After all, "[t]he point of vacatur is to prevent an unreviewable decision 'from spawning *any legal consequences*,' so that no party is harmed by what [the Supreme Court has] called a 'preliminary' adjudication." *Camreta,* 131 S. Ct. at 2035, citing *Munsingwear*, 340 U.S. at 40 - 41.

In light of the forgoing points and authorities, Sands respectfully request that if this Court finds his appeal moot, that this Court order vacatur of the district court's Findings of Fact and dismissal of the Order to Show Cause insofar as the same apply to him.

RESPECTFULLY SUBMITTED this 8th day of June, 2017.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**


By /s/   Craig Murdy
M. Craig Murdy (State Bar No. 011016)
Email: Craig.Murdy@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
Telephone (602) 385-1040
Attorneys for Non-Party Appellant Brian Sands

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of June, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF user, and service will be accomplished by the appellate CM/ECF system.

By /s/ M. Craig Murdy